```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

```
DONNA BAILEY,

                    Plaintiff,
        -vs-                          No. 1:15-CV-00991 (MAT)
                                      DECISION AND ORDER
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                    Defendant.
```
_____

## I.   Introduction

Represented by counsel, Donna Bailey ("plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Commissioner's motion is granted.

## II.  Procedural History

The record reveals that in July 2012, plaintiff (d/o/b May 19, 1977) applied for DIB, alleging disability as of March 1, 2011. After her application was denied, plaintiff requested a hearing, which was held via videoconference before administrative law judge Elizabeth W. Koennecke ("the ALJ") on April 16 and August 11, 2014. The ALJ issued an unfavorable decision on August 15, 2014. On

October 2, 2014, the Appeals Council granted plaintiff 25 additional days to submit new evidence. Plaintiff then submitted additional treatment records to the Appeals Council, after which the Appeals Council denied review of the ALJ's decision and this timely action followed.

## III. **Summary of the Evidence**

Plaintiff initially sustained an unspecified work-related right ankle injury on October 17, 2009. Plaintiff returned to work and did not receive further treatment for her injury until January 7, 2010, when she began treating with a podiatrist. On February 8, 2010, an MRI of her right foot indicated mild proximal tenosynovitis involving the flexor hallucis longus tendon sheath and synovitis with joint effusions involving the fourth and fifth metatarsolphalangeal joints. On April 26, 2010, plaintiff reported that she had reinjured her foot at work by dropping a case of beer on it. She received further treatment, and on September 2, 2010, she reported that she had "returned to regular work duty/activity." T. 349.

On March 1, 2011, Dr. Beth Dollinger performed surgery to repair plaintiff's ankle. Plaintiff then attended regular physical therapy sessions with physical therapist ("PT") Jennifer Smielecki. PT Smielecki recorded that plaintiff's gait improved, even without a crutch, in May and June 2011. Plaintiff also reported that electrostimulation received at physical therapy improved her pain

2

and she was encouraged to use a TENS unit at home. In June 2011, PT Smielecki noted that plaintiff's tolerance for activity in physical therapy without a CAM (controlled ankle movement) boot was improving. Plaintiff attempted to return to work, with restrictions, in August 2011, but reported that her pain increased significantly when she returned to work. Plaintiff continued to attend physical therapy throughout the relevant time period. On May 30, 2013, PT Smielecki noted that plaintiff was "improving in strength, range of motion, and balance," T. 651, and PT Smielecki continued to focus on strengthening and balance.

In September 2011, Dr. Dollinger recorded that "[she was] unclear as to what [was] exactly going on with [plaintiff,] but at [that] point it [was] obvious that she [could not] work, so [Dr. Dollinger took] her out of work." T. 438. Physical examination revealed a "significant limp" and tenderness over the abductor hallucis incision but "no soft tissue swelling in and around her foot." T. 438. On October 13, 2011, Dr. Dollinger noted a moderate amount of soft tissue swelling and continued tenderness over the abductor hallucis release, Achilles tendon, and calf.

On October 6, 2011, Dr. Gerald Coniglio completed an independent medical examination of plaintiff for worker's compensation purposes. He noted some limitation in range of motion for the right foot as well as tenderness over the tarsel tunnel area halfway between the medial malleolus and medial aspect of the

3

right heel. He assessed plaintiff with a fair prognosis with treatment for tarsal tunnel syndrome. According to Dr. Coniglio, plaintiff could return to work with the following restrictions: she could walk 50 feet at one time on flat ground; she could not climb stairs or ladders; she could not kneel or squat; she must be ablet to sit and stand "as she so desire[d]"; she must be able to elevate the right leg as necessary; and she could lift up to 20 pounds occasionally from floor level to tabletop level. T. 422. Dr. Coniglio opined that plaintiff had not yet reached maximum medical improvement and recommended cortisone injection therapy and possible tarsal tunnel release. In Dr. Coniglio's opinion, plaintiff's treatment to date had not be reasonable or necessary, because several physicians failed to "entertain[] the diagnosis of tarsal tunnel" and "none [had] performed an examination in an attempt to determine whether [plaintiff had] tarsal tunnel syndrome." T. 423. According to Dr. Coniglio, "if the diagnosis had been made, the [plaintiff] would likely have been able to return to her work in a reasonable and timely fashion [and] would not have undergone ineffectual surgery." Id.

On October 17, 2011, Dr. Look Persaud completed a consulting orthopedic examination at the request of the state agency. On physical examination, plaintiff presented as "an obese female in moderate, chronic distress," and demonstrated an abnormal gait with limping on the right and difficulty with heel-toe walk and squat.

4

She had limited range of motion ("ROM") of the right shoulder, some limitation in ROM of the lumbar spine, and limited ROM of the right ankle. Strength in the right ankle was 4/5, with "moderate atrophy of the right foot, ankle, and right leg," and "sensory deficit with diminished vibration and light touch of the right ankle and foot." T. 488-89. In Dr. Persaud's opinion, plaintiff had "no restrictions to sitting," but "moderate restriction from prolonged standing, moderate to marked restriction for walking on even surfaces, marked restrictions for walking on uneven terrain and up inclines, ramps, and stairs," "moderate to marked restrictions from squatting, kneeling, and crawling," "mild restrictions for bending . . . [and] reaching overhead and for abduction, internal rotation, and external rotation of the right upper extremity," "moderate to marked restriction for lifting, carrying, pushing, and pulling." T. 489.

On November 30, 2011, Dr. Dollinger injected plaintiff's tarsal tunnel with lidocaine and Depo-Medrol and advised her to continue using a TENS unit. In subsequent treatment notes, Dr. Dollinger recorded that plaintiff continued to complain of pain "localized to the right foot," and diagnosed her with chronic pain syndrome. See T. 457-60. Physical therapy notes dated January 2014 noted that plaintiff's sessions focused on strengthening exercises. On January 6, 2014, PT Smielecki noted that plaintiff was "challenged by strengthening exercises, however she report[ed]

decrease(d) pain afterwards." T. 669-70. PT Smielecki noted that plaintiff "require[d] encouragement to increase her activity at home." T. 656, 661. Plaintiff was eventually discharged to a home exercise program due to insurance coverage issues.

Plaintiff's most recent treatment notes from Dr. Dollinger indicate that on February 13, 2013, plaintiff had "mild to moderate soft tissue swelling" in her left knee, and she could perform a straight leg raise ("SLR") test but reported tenderness. Dr. Dollinger noted that plaintiff's father attended her February 2013 visit "and seem[ed] very concerned that she should be on Social Security disability because of a problem with her right foot." T. 515. Dr. Dollinger explained to plaintiff's father that Dr. Dollinger "under[stood] that [plaintiff] ha[d] chronic pain in the right foot," but "she could still do a sit down job and need[ed] to be involved in some type of vocational rehabilitation." Id. Over the next few months, plaintiff continued to complain of pain in her left knee, which she reported began after she "lost balance and came down on her left knee and twisted it" several months earlier. A November 2013 X-ray revealed minimal changes to the medial, lateral, and patella-femoral compartments of plaintiff's left knee. A December 2013 MRI revealed "evidence of old [Osgood]-Schlatter's disease,"[1] but was otherwise unremarkable.

---

[1] Osgood-Schlatter disease (OSD), also known as apophysitis of the tibial tubercle, or Lannelongue's disease, is an inflammation of the patellar ligament at the tibial tuberosity. It is

Dr. Bruce Greene, plaintiff's orthopedic surgeon, noted an unremarkable physical examination, including an "unassisted, normal gait," and referred plaintiff for further physical therapy due to her continued complaints of pain.

In February 2014, Dr. Dollinger noted that plaintiff was due to have knee surgery (an exploratory arthroscopy performed by Dr. Greene) in March 2014. On physical examination, Dr. Dollinger noted that plaintiff was a "very obese female who ambulate[d] with a limp," and the record indicates that although plaintiff reported tenderness, no objectively abnormal results were found during the physical examination. T. 524. Dr. Dollinger diagnosed plaintiff with ankle pain associated with a sprain, which Dr. Dollinger opined would "probably get better on its own," and limb pain which would be followed up on an as-needed basis. Two weeks after her March 2014 arthroscopy, Dr. Greene noted that plaintiff was "doing well" and was "without complaints." T. 546.

## IV.  The ALJ's Decision

At step one of the five-step sequential evaluation process, see 20 C.F.R. § 404.1520, the ALJ determined that plaintiff had not engaged in substantial gainful activity since March 1, 2011, the alleged onset date. At step two, the ALJ found that plaintiff suffered from the severe impairment of right foot tarsal tunnel

---

characterized by a painful bump just below the knee and is most often seen in young adolescents.

syndrome. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.

Before proceeding to step four, the ALJ determined that, considering all of plaintiff's impairments, plaintiff retained the RFC "to lift twenty pounds occasionally from the floor; lift/carry/push/pull twenty pounds occasionally and ten pounds frequently; sit without limitations; stand/walk for two hours in an eight-hour workday; rarely walk up and down inclines, on uneven terrain or up and down stairs; and never climb ladders." T. 53.

At step four, the ALJ found that plaintiff was unable to perform past relevant work. At step five, the ALJ found that considering plaintiff's age, work experience, and RFC, there were significant numbers of jobs in the national economy which she could perform. Accordingly, the ALJ found that plaintiff was not disabled.

## V.   Discussion

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion.'" <u>Shaw v.</u>
<u>Chater</u>, 221 F.3d 126, 131 (2d Cir. 2000).

### A.    Vocational Expert Testimony

Plaintiff contends that the Commissioner failed to establish
that there were a sufficient number of jobs existing in the
national economy which plaintiff could perform. Specifically,
plaintiff contends that the vocational expert's ("VE") testimony
was unreliable for two reasons. First, plaintiff contends that the
VE did not provide an accurate estimate of the number of jobs which
she could perform, because in addition to providing the relevant
Dictionary of Occupational Titles' job titles (of charge-account
clerk, addresser, and document preparer), he also referenced
Occupational Employment Survey codes, which included more job
titles than the three DOT codes listed by the VE as pertaining to
plaintiff. As the Commissioner points out, however, both the VE and
the ALJ recognized that the OES codes were broader than the DOT
codes.

Upon specific questioning from the ALJ, the VE testified that
he could estimate the numbers of jobs available relevant to the DOT
job titles only, an estimate that obtained by use of a program
called "Job Browser Pro." The Court finds that the ALJ did not err
in relying on the VE's testimony, considering the VE's broad
experience and the explicit understanding that he estimated the
number of job titles available to plaintiff within the specific DOT

9

codes cited – not within the broader OES codes. See, e.g., <u>Kennedy v. Astrue</u>, 343 F. App'x 719, 722 (2d Cir. 2009) (affirming the Commissioner's decision where the VE "discounted from the total numbers for all 60 DOT titles" to reach an estimate number of jobs available in *specific* titles); cf. <u>Walker v. Colvin</u>, 2016 WL 4768806, at *7 (N.D.N.Y. Sept. 13, 2016) (collecting cases, clarifying that it reversed due to the VE's "lack of any attempt to demonstrate that the identified jobs titles were available to plaintiff").

Second, plaintiff argues that the VE's testimony was inadequate to support the ALJ's decision because the VE expressed difficulty estimating the number of jobs available for an individual limited to rarely climbing stairs. The VE did express some uncertainty in this regard, testifying:

A.   [The VE:] The only thing that I see here that would refute any employment would be the inability or the rare ability to climb stairs. Most employers do require you to get in and out of their building. So, that would limit the number of jobs available.

Q.   [The ALJ:] You can't name any?

A.   I can give you some sedentary positions, but again, Judge, the numbers won't be reliable because of the inability to climb stars or the rare ability to climb stairs. . . .

T. 84. However, the VE identified three DOT job titles to which he referred, and the Court takes judicial notice of the fact that the titles to which the VE referred provide that a requirement for climbing is "not present" in any of these titles. See DICOT

§§ 205.367-014, Charge-Account Clerk; 249.587-018, Document Preparer; 209.587-010, Addresser. Moreover, "climbing" is defined, for purposes of the DOT, as "[a]scending or descending ladders, stairs, . . . and the like, using feet and legs or hands and arms." SCODICOT, Appendix C, Physical Demands. Thus, the job titles to which the VE referred did not require any climbing and the ALJ properly relied on the VE's testimony, which was based on the ALJ's RFC finding.   **B.   Weight Given to Consulting Examiner's Opinion**

Plaintiff contends that the ALJ failed to properly evaluate and weigh the opinion of consulting physician Dr. Look Persaud. As discussed above, Dr. Persaud opined that plaintiff had "no restrictions to sitting," but "moderate restriction from prolonged standing, moderate to marked restriction for walking on even surfaces, marked restrictions for walking on uneven terrain and up inclines, ramps, and stairs," "moderate to marked restrictions from squatting, kneeling, and crawling," "mild restrictions for bending . . . [and] reaching overhead and for abduction, internal rotation, and external rotation of the right upper extremity," "moderate to marked restriction for lifting, carrying, pushing, and pulling." T. 489. Plaintiff argues that the ALJ failed to consider the applicable factors, delineated in 20 C.F.R. § 404.1527(c), when evaluating the weight given to Dr. Persaud's opinion. The Court disagrees.

The ALJ gave Dr. Persaud's opinion "some" weight, but declined to incorporate Dr. Persaud's upper extremity limitations into the RFC finding because they were "inconsistent with the finding above that this is the claimant's only severe impairment." T. 54. Although, as plaintiff points out, the ALJ is required to consider *all* of plaintiff's impairments during the sequential analysis, see 20 C.F.R. § 404.1525(a), the Court finds the ALJ's statement constituted harmless error because the decision as a whole indicates that the ALJ did consider all of plaintiff's impairments, including those deemed to be nonsevere, when coming to her RFC finding. See Sevene v. Astrue, 2011 WL 4708793, *4 (D. Vt. Sept. 15, 2011), report and recommendation adopted sub nom. Sevene v. Comm'r of Soc. Sec., 2011 WL 4708787 (D. Vt. Oct. 4, 2011). The ALJ here considered plaintiff's allegations of a right upper extremity impairment, but cited evidence from the record indicating that an EMG/NCS of the right upper extremity was normal and plaintiff was diagnosed with a temporary wrist contusion in February 2014. The ALJ was within her discretion to credit certain limitations opined by the consulting examiner, and reject others. See Lutz v. Colvin, 2016 WL 5401088, *7 (N.D.N.Y. Sept. 8, 2016), report and recommendation adopted, 2016 WL 5394740 (N.D.N.Y. Sept. 27, 2016) (holding that it was "not an error for the ALJ to accept only those portions of the consultive examiner's medical source statement that were consistent with the evidence in the record"). Moreover, other

12

than the upper extremity limitations which are not supported by this record, the ALJ's RFC finding adequately took into account the lower extremity limitations noted by Dr. Persaud. Therefore, the Court finds that the ALJ properly evaluated Dr. Persaud's opinion when formulating her RFC finding.

C.   **Credibility**

Plaintiff next contends that the ALJ improperly evaluated her credibility. In assessing credibility, an ALJ is required to consider the factors listed in 20 C.F.R. § 416.929(c) as well as other relevant authorities, including SSR 96-7p. Pursuant to SSR 96-7p,[2] the ALJ "must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." The ALJ's discussion in this case, which incorporates her review of plaintiff's testimony, indicates that she used the proper legal standard in assessing credibility, especially in light of the fact that she cited relevant authorities in that regard. See Britt v. Astrue, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20

--------

[2] The Court notes that SSR 96-7p was recently superceded by SSR 16-3p, which became effective March 28, 2016. SSR 96-7p, however, remains the relevant guidance for purposes of plaintiff's claim.

C.F.R. § 404.1529 and SSR 96-7p as evidence that the ALJ used the proper legal standard in assessing the claimant's credibility).

"'The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant,' . . . though a 'finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record[.]'" Martins v. Chater, 112 F.3d 504 (2d Cir. 1996) (internal citations omitted). In this case, the ALJ considered the following factors in assessing plaintiff's credibility: the ALJ concluded that plaintiff's testimony was not persuasive; plaintiff was repeatedly advised by her treating physical to participate in vocational rehabilitation but never did so; plaintiff was able to increase activity to lose weight, but allegedly not to perform work functions; plaintiff's knee condition was temporary; diagnostic testing had generally been normal or negative aside from her right ankle and plaintiff appeared able to sit comfortably at the hearing, without elevating her leg or requesting to do so; and finally, plaintiff's obesity complicated her physical conditions. Therefore, here, like in Martins, the ALJ "adequately explained [her] negative assessment of [plaintiff's] credibility as to the extent of her pain, citing [the] 'multiple factors [discussed

above.]'" <u>Id.</u> Accordingly, the Court will not disturb the credibility finding.

### D. Severity of Plaintiff's Alleged Fibromyalgia

Plaintiff argues that the ALJ improperly determined that she did not suffer from fibromyalgia as a severe impairment. The ALJ found that "[w]ith regard to pain syndrome, fibromyalgia and headaches, there [was] no evidence that any of these [had] been formally diagnosed." T. 52. The ALJ went on to find that pursuant to the relevant Social Security Ruling, SSR 12-2p, "it [was] clear the claimant [did] not meet the necessary criteria." <u>Id.</u> The Court agrees. SSR 12-2p requires, as a threshold, that a plaintiff have a "history of widespread pain – that is, pain in all equal quadrants of the body . . . – that has persisted (or that persisted) for at least three months." SSR 12-2p goes on to require "[a]t least 11 positive tender points on physical examination[.]" Plaintiff's medical records do not establish a diagnosis of fibromyalgia which comes close to meeting the standards of SSR 12-2p. The Court therefore finds that the ALJ properly considered plaintiff's allegations of fibromyalgia and determined that the impairment was not severe.

Moreover, there is no indication from the ALJ's decision that she failed to consider the impact of plaintiff's chronic pain – described in most of her records to be localized to her left lower extremity – throughout the balance of the sequential evaluation

15

process. See <u>Diakogiannis v. Astrue</u>, 975 F. Supp. 2d 299, 311-12 (W.D.N.Y. 2013) (""As a general matter, an error in an ALJ's severity assessment with regard to a given impairment is harmless . . . when it is clear that the ALJ considered the claimant's [impairments] and their effect on his or her ability to work during the balance of the sequential evaluation process.") (internal quotation marks and citations omitted).

### E.   New Evidence

Plaintiff contends that the Appeals Council failed to include new evidence in the administrative record and failed to provide a detailed explanation of its review of the records submitted subsequent to plaintiff's hearing. After receiving her unfavorable decision, plaintiff submitted three sets of documents to the Appeals Council: (1) medical evidence from Dr. Saeed Anwar dated September 24, 2014 which noted that plaintiff complained of "generalized body and predominantly low back pain," found that plaintiff was "[p]ositive for myalgias, back pain, and joint pain," and diagnosed plaintiff with fibromyalgia syndrome; (2) medical evidence from Dr. David Graham dated August 25 and September 10, 2014, which noted plaintiff's complaints of right hand pain and numbness in her right hand, and stated that "[a]lthough her nerve conduction tests were negative, her symptoms and exam [were] somewhat consistent with carpal tunnel syndrome" (see T. 23); and (3) medical evidence dated May 14 and July 6, 2015 from Dr. Laura

Llinas-Lux, which noted plaintiff's complaints of generalized pain, that she "had a recent fall," see T. 27, 30, and diagnosed her with chronic pain syndrome.

The Appeals Council declined review of the ALJ's decision, finding that the records submitted by plaintiff constituted "new information . . . about a later time." T. 2. The Court finds no error in the Appeals Council's determination. The evidence submitted by plaintiff to the Appeals Council, which this Court has thoroughly reviewed as it is contained within the administrative record, see T. 16-44, does not relate to the relevant time period in any meaningful way because it is not "relevant to [her] condition during [that] time period and it is [not] probative." Shrack v. Astrue, 608 F. Supp. 2d 297, 302 (D. Conn. 2009). The new evidence submitted by plaintiff relates only to her conditions after the relevant time period, and provides no new insight into her conditions as they existed during that time period. "While documents generated after the ALJ's decision may bear upon the "'severity and continuity of impairments existing'" during the relevant period, 'if the new evidence concerns only the claimant's condition after the relevant time period, a remand for consideration of this evidence is not appropriate.'" Collins v. Comm'r of Soc. Sec., 960 F. Supp. 2d 487, 501 (S.D.N.Y. 2013) (internal citations omitted). Accordingly, the Court finds that the Appeals Council properly denied review based on the new evidence.

## VI.   Conclusion

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Doc. 10) is denied and the Commissioner's motion (Doc. 14) is granted. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**


**S/Michael A. Telesca**
HON. MICHAEL A. TELESCA
United States District Judge

Dated:    January 14, 2017
          Rochester, New York.

18